| | |
|---|---|
| 1 | Your name: Antonio Huggins |
| 2 | Address: PO Box 12246 |
| 3 | San Francisco, CA 94112 |
| 4 | Phone Number: (650) 271-2412 |
| 5 | Fax Number: |
| 6 | E-mail Address: Antonio.Huggins@outlook.com |
| 7 | Pro Se [Select one: **Plaintiff** or Defendant] |

FILED
NOV 29 2017
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNDER SEAL

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

[Select one location: **San Francisco** / Oakland / San Jose / Eureka]

CV 17 6872   JSC

| | |
|---|---|
| Antonio Huggins | Case Number: _____ |
| PO Box 12246 San Francisco, CA 94112 | Title of Document: |
| Plaintiff(s), | COMPLAINT |
| vs. | |
| City of San Francisco - MTA | |
| John Haley | |
| Neal Popp | |
| Tom Curran | |
| John Does 1-25 | |
| Defendant(s). | |

31 U.S.C. 3730 (H), (i) Retaliatory Termination under the False Claims Act

31 U.S.C. 3730 (H) by the San Francisco Municipal Transportation Agency

31 U.S.C. 3729 (a) Liability for Certain Acts

TITLE OF DOCUMENT: _____   CASE NO.: _____

PAGE NO. 1 OF 12   [JDC TEMPLATE]

## COMPLAINT

ANTONIO HUGGINS

P.O. BOX 12246

SAN FRANCISCO, CA 94112

(A) Knowingly Presents a False Claim

(B) Knowingly makes a false record or statement material to a false or fraudulent claim

(C) Conspires to commit a violation of subparagraph (A), (B), (D), (E), (F) or (G) Between SFMTA and the contractor Kratos, to make fraudulent claims for payment against the Federal Homeland Security Dept. Grant that was funding the new video system for SFMTA busses and trains.

The SFMTA Kratos Contract requires that all testing be completed before payments for installations are made. Email exchanges, a Fleet Defect letter from October 2013 and minutes from the Project Meetings (documents obtained pursuant to a Sunshine Act request show that both Kratos and SFMTA knew that there were unresolved defects in the system going as far back as the pilot vehicles testing more than a year and a half before HUGGINS wrote his April 7 Email.

Ryan Morning, Krato's Director of Contracts responded to HUGGINS Email acknowledging the defects HUGGINS identified and stating that Kratos and its subcontractors were working on fixing them. Hugh Reynolds, who was signing off on installations also identified continuing defects in the system.

That means testing had not been completed. Nevertheless, Kratos "knowingly" submitted invoices that on their face falsely certified compliance with the contract and SFMTA "knowingly" authorized payment for those false invoices, "knowingly created false records material to those false claims for payment and knowingly submitted those false claims to the CCSF Controller's Office for payment from the grant funds.

TITLE OF DOCUMENT:_____ CASE NO.: _____

PAGE NO. 2 OF 12  [JDC TEMPLATE]

ANTONIO HUGGINS

PO BOX 12246

SAN FRANCISCO, CA 94112

HUGGINS IS REQUESTING A JURY TRIAL

HUGGINS was fired from his position after a steller 34 year career with the SFMTA. He thought he was following the City, State and Federal Rules by blowing the Whistle on a Video Security System that did not work but was being falsely signed off on.

HUGGINS was given a choice of "Resign or be Fired" HUGGINS chose to Resign, to protect his good name and to be eligible for future employment with the City of San Francisco. HUGGINS applied for re-instatement to his position but was not allowed to return – even though his Discharge Papers list his City Service as Satisfactory.

In fact, HUGGNS Service was exemplary. He was assigned technically challenging Projects, such as the Video Project, the Air Conditioning Shop Build, The Quality Assurance Program and even after being ousted from the Video Shop, HUGGINS was transferred to a different Shop and assigned Lead Supervisor duties in a newly created Tiger Team – dedicated to finding Repair Solutions for the most technically difficult Electric Transit Vehicle repairs in that Shop.

After multiple years and multiple Awards (including from the Top Level SFMTA Management for his work in the Video Shop, on the Kratos Project – Huggins was summarily terminated for his insistence that the new Kratos Video Equipment actually work before being paid for.

HUGGINS was forced out of his job before he was old enough to qualify for a full pension.

COMPLAINT

TITLE OF DOCUMENT:_____ CASE NO.: _____

PAGE NO. 3 OF 12 [JDC TEMPLATE]

COMPLAINT

Antonio Huggins

PO Box 12246

San Francisco, CA 94112


**VENUE:** SAN FRANCISCO MTA EMPLOYEE HUGGINS VS SAN FRANCISCO MTA. WORK SITE WAS SAN FRANCISCO, CA.


**STANDING:** HUGGINS WAS FIRED BY SFMTA AFTER COMPLAINING OF POSSIBLE WASTE AND FRAUD WITH HOMELAND SECURITY GRANT FUNDS

Attached is a 7 Page Document which lists other pertinent information including Citations from various Courts that are germane to this action.

**For Remedy, I request reinstatement to my previous position, back pay, and the full funding of my Pension.**

**Whatever Recovery is possible under the False Claims Act.**
**PUNITIVE AND COMPENSATORY DAMAGES.**

TITLE OF DOCUMENT: _____  CASE NO.: _____
PAGE NO. 4 OF 12 [JDC TEMPLATE]

1
2  ANTONIO HUGGINS
3  PO BOX 12246
4  SAN FRANCISCO, CA 94112
5
6
7      **HUGGINS IS REQUESTING A JURY TRIAL**
8
9
10
11
12
13  Date: __11-27-17_____         Sign Name: _[signature] Antonio R. Huggins_
14                                     Print Name: _Antonio R. Huggins_____
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TITLE OF DOCUMENT:_____ CASE NO.: _____
PAGE NO. _5_ OF _12_ [JDC TEMPLATE]

SFMTA terminated the 34 year career of a high performing employee who thought he was helping his employer when, on April 7, 2014, he wrote about a contractor's defective video system and what he said was beginning to look like fraud and theft of public funds.

It also deprived a single father caring for his severely disabled son, of his livelihood and it smeared Mr. Huggins' reputation and credibility by creating a "new reality" falsely accusing Mr. Huggins of lies and defamation when there was ample documentation demonstrating that he was telling the truth.

This deception was for the purpose of concealing a "conspiracy" between SFMTA and the contractor, Kratos, to make fraudulent claims for payment against the federal Homeland Security Dept. grant that was funding the new video system for SFMTA buses and trains.

   (31 U.S.C. 3729(a) Liability for Certain Acts.—
(1)In general.—Subject to paragraph (2), any person who—
(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
© conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);)
  between SFMTA and the contractor, Kratos, to make fraudulent claims for payment against the federal Homeland Security Dept. grant that was funding the new video system for SFMTA buses and trains.

Exhibit D to the contract between Kratos and the City and County of San Francisco (CCSF), requires that all testing be completed before payments for installations are made.  Email exchanges, a Fleet Defect letter from October 2013 and minutes from the project meetings (these documents were produced pursuant to a Sunshine Act request) Both Kratos and SFMTA knew that there were unresolved defects in the system going as far back as the pilot vehicle testing more a year and a half before Mr. Huggins wrote his April 7 email.

pg 6 of 12

Ryan Morning, Kratos' Director of Contracts responded to Mr. Huggins April 7 email acknowledging the defects Mr. Huggins identified and stating that Kratos and its subcontractors were working on fixing them.  Hugh Reynolds, who was signing off on installations also identified continuing defects in the system.  These email are part of Mr. Huggins' April 6-7 email line)

That means that testing had not been completed.  Nevertheless, Kratos "knowingly" submitted invoices that on their face falsely certified compliance with the contract and SFMTA "knowingly" authorized payment for those false invoices, knowingly created false records material to those false claims for payment and knowingly submitted those false claims to the CCSF Controller's office for payment from the grant funds.

31 U.S.C. 3729
(b)Definitions.—For purposes of this section—
(1) the terms "knowing" and "knowingly"—
(A) mean that a person, with respect to information—
(I) has actual knowledge of the information;
(ii) acts in deliberate ignorance of the truth or falsity of the information; or
(iii) acts in reckless disregard of the truth or falsity of the information; and
(B) require no proof of specific intent to defraud

Persons who conspire to present false or fraudulent claims for payment or who conspire to make or use a false record or statement material to a false or fraudulent claim, are liable for violations of the FCA. 31 U.S.C. 3729(a)(1)©.

A whistle blower claim under the United States False Claims Act, 31 U.S.C. 37130(h)(1) is not subject to the California Tort Claims Act and is still viable.

 The California Supreme Court has said,
"Because the claim presentation requirement is a "state substantive limitation couched in procedural language" [citation omitted] we concluded that the supremacy clause precluded us from applying the requirement to the federal cause of action. [citation omitted] "
State of California v. Superior Court (Bodde) (2004) 32 Cal.4th 1234 quoting

pg 7 of 12

from Williams v. Horvath 16 Cal.3d 834, 839

Because 31 U.S.C. 37130(h)(3) specifies its own three year statute of limitations for FCA whistle blower retaliation, California's procedural statutes of limitations do not apply either.

Mr. Huggins wrote that Kratos' conduct was beginning to look like fraud and theft of public funds. A plaintiff's use of the term "fraud" is an essential element in a case for retaliation under the FCA because the wrongdoing has to be a possible violation of the FCA and that means false claims for payment from a federal source or, as in this case, from a non-federal grantee, SFMTA. 31 U.S.C. 3729 (b)(2)(ii), Moore v. Cal. Inst.of Tech. Jet Propulsion Lab 275 F.3d 838 (9th Cir. 2002),

However, FCA retaliation claims are not a fraud claims, so the Complaint does not have to be pled with rule 9(b) particularity.

A plaintiff is protected by the FCA whether or not the he knew the specifics of the fraudulent scheme, whether or not he knew anything about the FCA and whether or not he was right about fraudulent activity as long as he was engaged in what is defined as Protected Activity. Moore v. Cal. Inst.of Tech. Jet Propulsion Lab 275 F.3d 838 (9th Cir. 2002). Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1103 (9th Cir. 2008).

Moore v. Cal. Inst.of Tech. Jet Propulsion Lab 275 F.3d 838 (9th Cir. 2002) is often cited for the definition of Protected Activity under the FCA

"We reaffirm this standard today and clarify that an employee engages in protected activity where (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government."

However, the statute has since been amended to exclude the word "employer" so accusing Kratos of what was "beginning to look like fraud and theft of public funds" instead of SFMTA would not be a limitation on Mr. Huggins' Protected Activity. Furthermore, Kratos and SFMTA are co-conspirators.

Pg 8 of 12

Mr. Huggins' statement that it was beginning to look like fraud and theft of public funds was a good faith belief based on the acknowledged defects in the Kratos video system and the fact that Kratos was still being paid.

There is also documentation, produced in response to a Sunshine Act request, that at least one other Electronics Technician, Hugh Reynolds, and an outside consultant, Glenn Cross, "might believe" that SFMTA "was possibly committing fraud against the government." They were concerned enough about the possibility of fraud that after Mr. Huggins wrote his April 7 emails they both terminated "Acceptances," an SFMTA procedure which was a pre-condition to Kratos receiving payment.

Hugh Reynolds wrote that he could not in good conscience be a party to corruption and fraud and though he had no direct evidence of cheating he would not sign off on any more installations until the issues Mr. Huggins raised were resolved. Glenn Cross wrote that Acceptances had stopped because "the team" was concerned about performance issues.

It is indisputable that SFMTA management knew about Mr. Huggins' April 7 emails as well as the attached emails from Hugh Reynolds and Ryan Morning acknowledging unresolved defects in the Kratos video system. Mr. Huggins did not send those emails to management, but Hugh Reynolds did when he wrote his email stating that he could not be a party to corruption.

Some other circuits articulate the definition of protected activity differently, but all of the definitions come down to activities that concern the employer's knowing submission of false or fraudulent claims for payment from the federal government
or from a non-federal grantee such as SFMTA.

31 U.S.C. 3729(b)(2)

(2) the term "claim"—
(A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that—

(I) is presented to an officer, employee, or agent of the United States; or
(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—
(I) provides or has provided any portion of the money or property requested or demanded; or
(II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded; and

There is also documentation that Mr. Huggins was fired because he refused to retract his technical assessments about the Kratos system unless someone showed him that he was wrong.

Mr. Huggins was removed from the Video shop in May 2014 while he was out on Family Medical Leave to care for his son who had recently been hospitalized. In August he was put on paid leave of absence while SFMTA "investigated" his communications with Kratos. That came down to trying to coerce him into writing apologies for the tone of his April 7 email and a retraction and apology for his technical assessments of the Kratos video system. He willingly wrote the apology for the tone of his email but he wrote to Industrial Relations Representative, Chris Iborra, that he could not retract his technical assessments unless someone showed him that he was wrong.

Chris Iborra responded by writing,

"Ok Mr. Huggins, I guess we have no other recourse
     but to continue with the process.   Have a nice day."

A month later Mr. Huggins's direct supervisor, Neal Popp issued a notice of recommendation that Mr. Huggins be terminated, relying heavily on accusations that Mr. Huggins lied and defamed Kratos.

At the same time that SFMTA was going through this termination process, Neal Popp and Asst. Director of SFMTA, John Haley, asked Mr. Huggins to head up a "Tiger Team" for bus repairs to reduce the number of road calls for broken down buses.

That makes clear that Mr. Huggins was a valuable employee both for his technical skills and his supervisory skills and the other accusations in the Notice about improper supervisory behavior were mere smoke screens. They were unique in Mr. Huggins' 34 year career and he was not counseled, sent to training or removed from a supervisory position in the seven months between his April 7 email and delivery of the final Skelly decision terminating him.   Those concerns exist only in the Skelly paper work.

Evidence of unresolved defects in the video system, false certification that invoices conform to the terms of the contract, failure to meet the conditions precedent for payment and SFMTA's complicity in creating false records and approving and submitting these fraudulent claims for payment to CCSF, is documented in plain English, easily incorporated into a Complaint and easily understood by a judge and jury.   A lot of that documentation was produced in response to a Sunshine Act Request.

EEOC CHARGES

There is still an open Right to Sue letter from the EEOC for a complaint of disability discrimination/refusal to accommodate and religious discrimination.   However, new case law may have ended its value for this case and the religious discrimination claim is a long shot.

Mr. Huggins that he file an EEOC/DFEH charge for disability discrimination, based on language in Humphrey v. Memorial Hospitals Association. 239 F.3d 1128 (9th Cir. 2001).
    "For purposes of the ADA, with a few exceptions, conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination. "

The emotional tone of Mr. Huggins April 7 emails and his emails warning his friend not to get involved in hiding Kratos' defalcations, are typical of post-concussion syndrome. Mr. Huggins raised the issue of accommodation for

Pg 11 of 12

this disability for the first time in his Skelly response, but it was rejected because he had not gone to SFMTA's own EEO office.   That is not a valid basis for rejecting accommodation but the August 25, 2017   Ninth Circuit decision in Alamillo v. BNSF Railway Co, seems to have made it irrelevant anyway.

Alamillo take the position that employees have to have made the request for accommodation before their employer begins disciplinary action.   I don't believe Mr. Huggins did anything about his post-concussion syndrome until after the recommendation of termination.   The public was just beginning to become aware of post-concussion syndrome at that time and although Mr. Huggins was distressed at his extreme emotionality, he did not realize it was a disability connected to his earlier concussion.

The religious discrimination claim goes to the language used in a letter sent to Louis Hogan, an employee in the video shop and a longtime friend of Mr. Huggins. SFMTA calls it bullying.   Mr. Huggins and Mr. Hogan are both deeply religious and both use the kind of "evangelical tone and language in that letter.   Mr. Hogan did not complain about it, SFMTA found it because it was written on SFMTA email although addressed only to Mr. Hogan.   In addition, Mr. Huggins was exhorting Mr. Hogan not to get involved in Kratos' defalcations, as some Video Shop employees have done so it may be a part of his whistle blowing activities.