Clayeo C. Arnold, SBN 65070
M. Anderson Berry, SBN 262879
Leslie Guillon, SBN 222400
Clayeo C. Arnold, A Professional Law Corporation
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile:  (916) 924-1829
Email:     aberry@justice4you.com
           lguillon@justice4you.com

Scott M. Stillman, SBN 267506
McGuinn, Hillsman & Palefsky
535 Pacific Avenue
San Francisco, California 94133
Telephone:  (415) 421-9292
Facsimile:  (415) 403-0202
Email:     sstillman@mhpsf.com

Attorneys for Plaintiff Antonio Huggins

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANTONIO HUGGINS,<br><br>               Plaintiff,<br><br>  vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>               Defendant. | CASE NO.:  CV-17-6872-JSC<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF 31 U.S.C. § 3730(h)**<br><br>**JURY TRIAL DEMANDED** |

**JURISDICTION, VENUE AND THE PARTIES**

1.      The sole claim in this First Amended Complaint arises under the retaliation provision in the False Claims Act, 31 U.S.C. § 3730(h).  The jurisdiction of this Court is founded on federal question jurisdiction, 28 U.S.C. § 1331, and 31 U.S.C. § 3732(a).

2.      Pursuant to 28 U.S.C. § 1391 and 31 U.S.C. § 3732(a), venue properly lies within the Northern District of California because Plaintiff and Defendant City and County of San Francisco reside in this judicial district and a substantial part of the events or omissions giving rise to this action occurred in this District.

3. Plaintiff Antonio Huggins ("Huggins") is a citizen of the United States and at all times relevant herein was a resident of San Mateo County, California.

4. Defendant City and County of San Francisco ("City" or "San Francisco") is a municipal corporation organized and existing under and by virtue of the laws of the State of California, and is a charter city and county.

## GENERAL FACTS AND ALLEGATIONS

5. Antonio Huggins began working for the City in or about 1981. Most recently, Huggins served as an Electronic Maintenance Assistant Supervisor for the City's San Francisco Municipal Transportation Agency ("SFMTA").

6. Throughout his career, Huggins consistently performed his job duties well, receiving multiple promotions and praise in recognition of his stellar work.

7. In or about 2011, SFMTA desired to obtain the services of a qualified firm to replace the digital video surveillance ("DVS") system in hundreds of SFMTA's buses and light rail vehicles (the "Project").

8. Ultimately, on or about August 13, 2012, the City, acting by and through the SFMTA, entered into a written contract with Henry Bros. Electronics, Inc. ("Henry Bros."), contract number CPT 672 (the "Contract"), for the performance of the Project. Henry Bros. was a wholly-owned subsidiary of Kratos Defense & Security Solutions, Inc. (hereafter collectively referred to as "Kratos").

9. The Contract for the Project was funded by a grant from the United States Department of Homeland Security.

10. In or about 2012, Huggins worked as an Electronics and Video Surveillance Supervisor in SFMTA's Video Department. In this role, Huggins worked closely with Kratos to ensure that all the equipment Kratos installed into SFMTA vehicles functioned properly after the installations.

11. In or about April 2014, Huggins raised concerns to SFMTA management and Kratos, among others, about inappropriate conduct in the performance of the Project under the Contract. These concerns could constitute violations of the False Claims Act, 31 U.S.C. §§ 3729

- 3733.  For instance, on or about April 7, 2014, Huggins sent an email to various SFMTA and Kratos employees in which he stated that the inappropriate conduct under the Contract looked like "fraud and theft of public funds."  This email was then forwarded to City management.  Huggins objected to these inappropriate actions in an effort to make them stop.

12. In retaliation for Huggins raising the concerns described above, the City removed Huggins from the Project.  On or about May 7, 2014, the City provided Huggins a letter communicating this decision, which stated, in relevant part, that "you are not to instruct, direct, or participate in any manner with any MTA or Kratos staff regarding Video contract CPT 672.  You are not assigned to CPT 672, and any instruction, communication, or participation in the project constitutes interference and is outside your job duties with the MTA."

13. The next day, on or about May 8, 2014, Huggins was removed entirely from the Video Department and transferred to Bus Maintenance Support.

14. In or about September 2014, the City placed Huggins on paid administrative leave for thirty days with no explanation.  When Huggins inquired about why he was being placed on leave, Chris Iborra ("Iborra"), SFMTA's Employee Relations Manager, responded in an email that "[w]e will be meeting with you this coming week to discuss pending issues regarding your exchange of emails with outside vendors."  The only outside vendor ever discussed was Kratos.

15. On or about September 26, 2014, while Huggins was still on leave, Neal Popp ("Popp"), SFMTA's Deputy Director of Bus Maintenance, informed Huggins that an apology to Kratos would help with a resolution of the City's investigation into Huggins' communications.

16. Huggins responded that "[a]lthough I stand 100% behind my technical assessment and I am not aware of any inaccuracies [(referring to his April 2014 communications to Kratos and others)], I agree to apologize for my tone and I will retract any inaccurate statements made by me if it can be demonstrated to me that those statements are inaccurate."  Iborra wrote back to Huggins that "[t]hanks, but what about the accusations made? Need to be more specific to your allegations."

17. On or about October 2, 2014, Huggins informed Iborra and Popp that:

Chris/Neal,

> I can't apologize for telling the truth.
>
> On 9-29-14 I sent you [an] email directed to Kratos which apologized for the tone of my letter to them but which also said:
>
> '. . . I stand 100% behind my technical assessment and I am not aware of any inaccuracies. I agree to apologize for my tone and I will retract any statements made by me if it can be demonstrated to me that those statements are inaccurate.'
>
> [Popp] told me to take that out so I sent the apology for the tone of my letter. All of my statements are true and as such they are not slanderous nor libelous.
>
> So far neither Kratos nor MTA has even tried to demonstrate that these statements are inaccurate. I don't want to be set up for taking the blame when things don't work in the future and furthermore, I think it would be illegal for you to discipline me for telling the truth.

18. Iborra responded to Huggins by email, stating that "I guess we have no other recourse but to continue with the process."

19. In a Skelly Notice of Proposed Termination, dated October 20, 2014, Popp informed Huggins that he was "proposing that [Huggins] be dismissed from [his] position . . ."

20. Yet, at the same time he was proposing Huggins' termination, Popp recognized Huggins outstanding performance as an electronics supervisor by assigning him to head up a "Tiger Team" for bus maintenance intended to address particularly frequent bus breakdowns.

21. A Skelly Hearing was scheduled for November 10, 2014 and in lieu of attending the hearing, with SFMTA's agreement, Huggins submitted a written response to the Notice of Proposed Termination. On or about November 25, 2014, a Skelly decision was issued in which the City confirmed the recommendation for Huggins' termination.

22. In or about December 2014, the City's Director of Human Resources informed Huggins that if he did not retire/resign his employment, then the City would finalize the termination process already begun.

23. Thus, the City constructively discharged Huggins when it compelled him to retire/resign in lieu of termination in or about December 2014. Huggins separation papers stated that he separated with satisfactory as opposed to unsatisfactory performance.

///

///

## CLAIM
### Retaliation In Violation Of The Federal False Claims Act
### (31 U.S.C. § 3730(h))

24. Plaintiff hereby incorporates by reference the allegations set forth in ¶¶ 1 through 23 as though fully set forth herein.

25. 31 U.S.C. § 3730(h) provides, in relevant part, "(1) Any employee . . . shall be entitled to all relief necessary to make that employee . . . whole, if that employee . . . is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of . . . efforts to stop 1 or more violations of this subchapter."

26. As described above, Huggins raised concerns to City/SFMTA management related to inappropriate conduct in the performance of the Project under the Contract that he reasonably believed looked like "fraud and theft of public funds."  These concerns could constitute violations of the False Claims Act, 31 U.S.C. §§ 3729 - 3733.  He objected to these inappropriate actions in an effort to make them stop.

27. In response to Huggins' protected activity, the City retaliated and removed Huggins from the Project, transferred him to a different department, and ultimately terminated him on account of his lawful and protected conduct.

28. As a direct and proximate result of the City's conduct, Huggins has suffered damages.

WHEREFORE, Huggins prays for judgment as follows:

### PRAYER FOR RELIEF

WHEREFORE, Huggins prays for judgment against Defendant as follows:

1. All damages Huggins is entitled to under 31 U.S.C. § 3730(h), including but not limited to double back pay, reinstatement, front pay, and other special and general damages;

2. For costs of suit herein incurred, including attorneys' fees; and

3. For such other relief as the Court deems just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY**

1 | Dated: July 2, 2018        Respectfully submitted,

Clayeo C. Arnold, A Professional Law Corporation
M. Anderson Berry, Esq.

McGuinn, Hillsman & Palefsky
Scott M. Stillman, Esq.

/s/ M. Anderson Berry
M. Anderson Berry, Esq.
*Attorneys for Plaintiff*